# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

CARLTON CLELAND,
     Plaintiff,

v.                                                                    Case No. 17-C-0275

MORTARA INSTRUMENT, INC.,
     Defendant.

---

## DECISION AND ORDER

The plaintiff, Carlton Cleland, alleges that the defendant, Mortara Instrument, Inc., failed to pay him commissions that he earned while working as its sales agent. He brings this action under Wisconsin law, seeking damages for breach of contract or, in the alternative, equitable relief under the doctrines of promissory estoppel and unjust enrichment.[1] Before me now is Mortara's motion for summary judgment.

## I. BACKGROUND

Mortara makes and sells medical devices throughout the country. Between June 2007 and May 20, 2016, Mortara employed Cleland as a Cardiology Account Executive. Cleland's duties in this position included selling medical devices to customers, providing training to customers, and servicing equipment. During his employment, Cleland had an assigned sales territory that consisted of the southern half of Nebraska, all of Kansas, the northern half of Arkansas, all of Missouri, and the bottom half of Iowa.

---

[1] The complaint alleges a claim under Wis. Stat. § 134.93, which governs payment of commissions to certain sales representatives, but the plaintiff has since conceded that he is not entitled to relief under that statute. (Br. in Opp. at 9, ECF No. 37.)

Cleland's compensation took the form of both a fixed salary and commissions on sales. The commissions portion of his compensation was governed by a written agreement. This agreement is a somewhat skeletal document that mostly describes how commissions would be calculated. (Decl. of Carlton Cleland, Ex. A, ECF No. 40-1.) However, it also contains some terms. As is relevant here, the agreement states that "[c]ommissions are earned upon shipment, paid by the end of the subsequent month." (*Id.* at p. 1.) The agreement also states that "[a]ll commission determinations are subject to approval by" Mortara. (*Id.*)

On May 20, 2016, Mortara terminated Cleland's employment. Mortara contends, and Cleland does not dispute, that it terminated him "because of customer complaints and Cleland's ongoing issues with properly managing his territory." (Def. Prop. Finding of Fact ("PFOF") ¶ 25.) Cleland's last paycheck was dated June 23, 2016, and it included commissions on sales that had shipped during the last month of his employment.

After Mortara terminated Cleland, it promoted an existing employee, Kevin Tecce, to the position of account executive for Cleland's former territory. However, it took Mortara until August 2016 to move Tecce into Cleland's former position. At that point, Mortara and Tecce entered into a commission agreement that was in all material respects identical to the agreement between Mortara and Cleland. Mortara then began paying Tecce commissions on orders that shipped into the territory. (Def. PFOF ¶ 36.) Some of these commissions were for orders that Cleland had worked on while he was the account executive for the territory. These commissions were for orders that closed

sometime after Cleland had sent quotes to the customers but did not ship until after Cleland had been terminated. (*Id.*)

Cleland and Tecce are close friends. After Tecce was promoted to Cleland's former position, the two men had a conversation in which Tecce told Cleland that he was receiving commissions based on work that Cleland had performed. Cleland was surprised to learn that Mortara was paying Tecce those commissions because he "just assumed that management would absorb all those commissions." (Def. PFOF. ¶ 38.)

Tecce remained the account executive for Cleland's former territory until January 2017. At that point, a different Mortara employee, David McNeel, became the account executive for the territory. Mortara and McNeel then entered into the same commission agreement as Mortara had entered into with Cleland and Tecce  Once McNeel took over, Mortara began paying him the commissions on orders that shipped into the territory, including on orders that resulted from Tecce's work but which did not ship until after McNeel became the account executive.

Cleland commenced this suit in February 2017. He contends that Mortara breached the commission agreement by failing to pay him commissions on orders that resulted from his work as the account executive for the territory but did not ship until after he was terminated. He also contends that, if the commission agreement proves to be "illusory," then he is entitled to recover those commissions under the doctrines of promissory estoppel and unjust enrichment. (Br. in Opp. at 1, ECF No. 37.)

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). The parties agree that Wisconsin substantive law applies to their dispute.

**A. Breach of Contract**

Under Wisconsin law, a court tasked with interpreting a contract attempts to identify the intent of the parties as expressed by the contractual language they used. *Betz v. Diamond Jim's Auto Sales*, 355 Wis. 2d 301, 320 (2014). In ascertaining the parties' intent, the court must give contract terms their plain or ordinary meaning. *Id.* If the contract is unambiguous, the court's attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence. *Id.* Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent. *Id.* at 321.

The interpretation of an unambiguous contract presents a question of law for the court. *Town Bank v. City Real Estate Dev., LLC*, 330 Wis.2d 340, 355 (2010). Conversely, when a contract is ambiguous and properly construed by use of extrinsic evidence, the contract's interpretation presents a question of fact for the jury. *Id.*

Cleland and Mortara both contend that the contract unambiguously supports their respective positions in this case. However, Mortara argues, in the alternative, that if the contract is ambiguous, then it is still entitled to summary judgment because all of the extrinsic evidence in the record supports its own interpretation of the contract. Indeed, Cleland does not point to any extrinsic evidence that favors his interpretation. His sole

4

argument in support of his breach-of-contract claim is that the agreement unambiguously requires payment of the disputed commissions to him. (Br. in Opp. at 4–6.) For this reason, I will begin by examining Cleland's argument that the contract is unambiguous. If I reject this argument, then Mortara will be entitled to summary judgment, as Cleland does not point to evidence that a reasonable jury could use to resolve the ambiguity in his favor.

Cleland's argument that the contract is unambiguous boils down to this: The agreement states that a commission is earned upon shipment; therefore, Cleland is entitled to be paid commissions on any orders that he played a role in procuring at the time that they shipped. (Br. in Opp. at 4–6.) The problem here is that Cleland points to no language in the contract suggesting that an account executive can "earn" a commission after termination of the agreement. The agreement itself does not state that any part of it survives termination. Moreover, the agreement does not contain provisions that would enable the parties to determine which post-termination shipments should be credited to the terminated account executive. The agreement does not, for example, state that at the time of shipment the terminated account executive will earn a commission on any orders that he procured before he was terminated or on any orders for which purchase orders were received prior to his termination. *Cf. Hammond Group, Ltd. v. Spalding & Evenflo Cos., Inc.*, 69 F.3d 845, 847 (7th Cir. 1995) (discussing sales-agent contract that contained a provision for crediting terminated agent with commissions for sales procured prior to termination). Cleland asserts that the agreement unambiguously requires that Mortara pay him commissions on any orders that he procured, but this is just table-thumping on his part. He does not tie his

argument to the text of the agreement or use other tools of contract interpretation to show that the agreement unambiguously entitles a terminated account executive to commissions on orders that did not ship until after his termination.

To be sure, it might be *reasonable* to interpret the agreement as entitling the terminated account executive to commissions on orders that he procured but which did not ship until after his termination. One of the purposes of the agreement is to compensate account executives for their work, and nothing in the agreement explicitly states that a terminated account executive cannot earn a commission on orders that he procured if they do not ship until after his termination. But, assuming that this is a reasonable interpretation of the agreement, it is certainly not the only one. As discussed above, the agreement states that commissions are not earned until shipment, does not provide that any part of the agreement survives termination, and does not contain provisions for crediting a terminated account executive with commissions on post-termination shipments. Thus, it is at least also reasonable to interpret the agreement as meaning that an account executive does not earn commissions on orders that do not ship until after the agreement is terminated.

For the above reasons, I find that the contract is at least ambiguous as to whether a terminated account executive may earn commissions on orders that he procured but which did not ship until after his termination. And as indicated above, Cleland develops no argument suggesting that a reasonable jury could resolve this ambiguity in his favor. Rather, all of the extrinsic evidence that the parties have cited favors Mortara's interpretation. First, there is no dispute that Mortara consistently interpreted the agreement to mean that an account executive is not entitled to

commissions on orders that did not ship until after termination of the agreement. Instead, Mortara understood the agreement to mean that an account executive earns a commission at the time of shipment simply by being the account executive for the territory into which the order is shipped on the date of shipment. This is why Mortara paid Tecce commissions on orders that Cleland had procured but which shipped after Tecce became the account executive for the territory, and why it paid McNeel commissions on orders that Tecce had procured but which shipped after McNeel became the account executive for the territory. Indeed, it is undisputed that Mortara never paid a commission to any sales representative on sales that did not ship until after the end of the sales representative's employment. (Def. PFOF ¶ 19.)

Second, Cleland's own testimony shows that he did not understand the commission agreement to entitle him to commissions on the orders that he procured but which did not ship until after he was terminated. Cleland testified at his deposition that he was surprised to learn that Mortara was paying Tecce commissions on orders Cleland had worked on and that he "just assumed that management would absorb all those commissions." (Def. PFOF ¶ 38.) Accordingly, none of the extrinsic evidence to which the parties have cited in their briefs or proposed findings of fact supports Cleland's current interpretation of the commission agreement. Mortara is entitled to summary judgment on the claim for breach of contract.

Before moving on, I pause to discuss the common-law "procuring cause" doctrine. This is a principle of agency law under which an agent is entitled to commissions when he or she "procures an order from a ready, willing, and able purchaser, and this order is received by the company" even though actual delivery and

7

payment may be made after termination of the agency relationship. *Zweck v. D. P. Way Corp.*, 70 Wis.2d 426, 430–31 (1975); *Leen v. Butter Co.*, 177 Wis.2d 150, 153 (Ct. App. 1993). When it applies, the doctrine entitles the agent to commissions "irrespective of whether or not the agency contract provides for payment of commissions after termination." *Leen*, 177 Wis. 2d at 153. However, the procuring-cause doctrine can be modified by contract, and it will not entitle the agent to commissions when the agency agreement specifically limits the recovery of commissions following termination. *Id.* at 154–55.

In the present case, Cleland does not argue that he is entitled to post-termination commissions under the procuring-cause doctrine. Mortara, however, in its motion for summary judgment, addresses the doctrine and argues that it does not apply here, even if the commission agreement does not specifically limit the recovery of post-termination commissions. Citing the Wisconsin Court of Appeals's decision in *Leen*, which in turn relies on the Restatement (Second) of Agency § 454, Mortara contends that an agent wishing to recover under the procuring-cause doctrine must prove two elements: (1) that the principal terminated the agency relationship to avoid paying commissions to the agent; and (2) that the agent was the "procuring cause" of the sales. *See Leen*, 177 Wis. 2d at 154. Mortara then notes that it is undisputed that it did not terminate Cleland to avoid paying him commissions on orders that he had solicited. Rather, Cleland admits that Mortara terminated him "because of customer complaints and Cleland's ongoing issues with properly managing his territory." (Def. PFOF ¶ 25; *see also* Def. PFOF ¶ 32.) Thus, argues Mortara, Cleland has failed to raise a triable issue of fact on one of the elements he must prove to recover under the procuring-cause doctrine.

8

In his brief in opposition to Mortara's motion for summary judgment, Cleland does not mention the procuring-cause doctrine or respond to Mortara's argument that the doctrine does not apply here. He does not dispute that, to recover under the doctrine, he would have to prove that Mortara terminated him in order to avoid paying him commissions. He also does not dispute that Mortara terminated him for reasons that do not relate to the payment of commissions. Thus, I understand Cleland to be conceding that he cannot recover under the procuring-cause doctrine. Moreover, even if Cleland has not conceded this point, I would deem any argument under the procuring-cause doctrine to be waived due to Cleland's failure to respond to Mortara's argument that the doctrine does not apply. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

**B.     Promissory Estoppel and Unjust Enrichment**

As discussed above, Cleland's primary claim is that Mortara breached the commission agreement by failing to pay him commissions on orders that he procured but which did not ship until after he was terminated. However, he argues in the alternative that if the commission agreement proves to be "illusory," then he is entitled to recover the disputed commissions under theories of promissory estoppel and unjust enrichment. (Br. in Opp. at 6–9.) Cleland concedes that if the commission agreement is enforceable, then his claims under these theories would be barred, as a party cannot recover under either theory when an enforceable contract governs the parties' relationship. (Br. in Opp. at 8.)

Cleland's argument that the commission agreement might be "illusory" relates to a provision of the agreement stating that "[a]ll commission determinations are subject to

9

approval" by Mortara.  As an alternative to its argument that the commission agreement does not require payment of post-termination commissions, Mortara argues that it could have denied Cleland commissions under this provision.  Remarkably, Mortara argues that even if the commission agreement provided that Cleland was entitled to commissions on orders that shipped following his termination, Mortara retained discretion to simply disregard that provision and deny him commissions because the agreement stated that all commission determinations are subject to approval.  (Br. in Support at 11.)  If this argument were correct, then the contract would indeed be illusory.  Mortara would essentially be claiming a right to disregard the other terms of the agreement and pay only those commissions that it felt like paying.  *See Nodolf v. Nelson*, 103 Wis. 2d 656, 660 (Ct. App. 1981).  But I do not think that the "subject to approval" clause in fact leaves payment of commissions to Mortara's whim.  Rather, the clause likely means that Mortara retains discretion to make a commission determination when an issue arises that is not otherwise covered by the terms of the agreement.  In situations in which the agreement dictates that a commission must be paid, Mortara does not have discretion to ignore the agreement and refuse to pay the commission.  Thus, the agreement is not illusory, and Cleland cannot recover under theories of promissory estoppel or unjust enrichment.

In any event, even if the commission agreement were unenforceable, Cleland would not be entitled to relief under promissory-estoppel or unjust-enrichment theories.  With respect to promissory estoppel, Cleland has not produced evidence showing that Mortara ever promised to pay him commissions on sales that did not ship until after he was terminated.  Thus, there was never any "promise" that could form the basis for a

claim of promissory estoppel. *See Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698 (1965). With respect to unjust enrichment, I do not see how it could be inequitable for Mortara to refuse to pay Cleland commissions on orders that did not ship until after he was terminated. *See Seegers v. Sprague*, 70 Wis. 2d 997, 1004 (Ct. App. 1975). Cleland received a salary in addition to his commissions, and thus Cleland was not left completely uncompensated for his work in procuring the sales that shipped after his termination. Moreover, Cleland himself admitted that he had no expectation of receiving commissions on orders that did not ship until after his termination—he testified that he thought that Mortara would "absorb" those commissions. (Def. PFOF ¶ 38.) Thus, Mortara is entitled to summary judgment on Cleland's claims for promissory estoppel and unjust enrichment.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Mortara's motion for summary judgment (ECF No. 27) is **GRANTED**. The Clerk of Court shall enter final judgment.

**IT IS FURTHER ORDERED** that Mortara's motion to seal (ECF No. 34) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2018.

                                          s/Lynn Adelman
                                          LYNN ADELMAN
                                          United States District Judge